(24 P.3d 149)
No. 83,727

STEVEN R. MUELLER, *Appellant*, v. STATE OF KANSAS, *Appellee*.

Opinion filed April 6, 2001.

*Brent Getty*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Steven R. Mueller*, appellant pro se.

No appearance for the appellee.

Before RULON, C.J., PIERRON, J., and ROGG, S.J.

PIERRON, J.: Steven R. Mueller appeals the denial of his motion filed pursuant to K.S.A. 60-1507.

Mueller was convicted of aggravated robbery, a class B felony, occurring on January 28, 1985. He was sentenced to a prison term of 10 to 20 years which was to run consecutive to a sentence from Shawnee County. The sentence was later modified to show the sentence was to run consecutive to a sentence from Douglas County. Muller was granted parole on June 15, 1992.

Effective July 1, 1993, the legislature enacted the Kansas Sentencing Guidelines Act (KSGA). See L. 1992, ch. 239. As a part of the KSGA, K.S.A. 1993 Supp. 22-3717(f) provided:

"If an inmate is sentenced to prison for a crime committed after July 1, 1993, while on parole or conditional release for a crime committed prior to July 1, 1993,

the old sentence shall be converted into a determinate sentence and will run consecutive to the new sentence as follows. . . ."

This subsection was in effect from July 1, 1993, until it was amended on March 24, 1994. See L. 1992, ch. 239, § 270; L. 1994, ch. 21, § 1. Mueller violated his parole conditions in February 1994 by failing to submit to a timely drug screen and was returned to prison.

After the amendment in 1994, the relevant part provided:

"If a person is sentenced to prison for a crime committed on or after July 1, 1993, while on . . . parole . . . for a crime committed prior to July 1, 1993, and the person is not eligible for retroactive application of the sentencing guidelines and amendments thereto pursuant to K.S.A. 21-4724 and amendments thereto, the new sentence shall not be aggregated with the old sentence, but shall begin when the person is paroled or reaches the conditional release date on the old sentence. If the offender was past the offender's conditional release date at the time the new offense was committed, the new sentence shall not be aggregated with the old sentence but shall begin when the person is ordered released by the Kansas parole board or reaches the maximum sentence expiration date on the old sentence, whichever is earlier. The new sentence shall then be served as otherwise provided by law." K.S.A. 1994 Supp. 22-3717(f).

This 1994 amendment placed the same limitations for retroactive sentence conversion upon parolees who committed a new offense as those placed upon parolees who committed a technical parole violation under K.S.A. 1993 Supp. 21-4724(b)(2). Subsection (b)(2) provided that offenders on "parole for crimes classified in subsection (b)(1) committed prior to July 1, 1993, who have such . . . parole revoked shall have their sentences modified according to the provisions specified in the [KSGA]." K.S.A. 1993 Supp. 21-4724(b)(1) limited retroactive sentence conversion to offenses classified in the presumptive probation grid block or border box blocks on the nondrug grid. Mueller was not eligible to have his sentence converted under that statute because aggravated robbery was a severity level 3 offense, see K.S.A. 21-3427, and a severity level 3 offense is classified as presumptive prison. See K.S.A. 21-4704(a).

In April 1994, Mueller was paroled again. In July 1995, Mueller missed an appointment with his parole officer, causing his parole

to be revoked. He was not convicted of or sentenced for any new offense.

In 1999, Mueller filed a pro se motion to correct an illegal sentence. He argued the KSGA's limited retroactive provisions for sentence conversion, K.S.A. 1993 Supp. 21-4724(b) and K.S.A. 1993 Supp. 22-3717(f), violated his due process rights because parolees could only have their pre-KSGA sentence converted if they committed a new felony while on parole and were sentenced to prison for the new felony. Mueller argued the conversion statutes placed an unconstitutional condition upon parolees by requiring relinquishment of their parole status, which is a protected liberty interest. This, he claimed, violated the "doctrine of unconstitutional conditions."

Mueller also claimed the statutes violated his equal protection rights under the 14th Amendment. He believed the statutes created an arbitrary distinction between parolees who committed a technical violation and parolees who committed a new felony. Thus, similarly situated parolees were not being treated equally.

Mueller stated the denial of sentence conversion had resulted in the infliction of severe emotional distress. By continuing to be held under his pre-KSGA sentence, he claims his sentence had evolved into cruel and unusual punishment, thereby violating § 9 of the Kansas Constitution Bill of Rights.

The district court found the sentence imposed was legal and applicable to the law in effect when the offense occurred as set forth in K.S.A. 21-4501. Also, Mueller had filed a previous 60-1507 motion raising substantially the same issues. Those findings and conclusions of the discussion on that motion were adopted.

After an analysis of jurisidictional issues, we have decided to address the substantive issues raised by Mueller.

Mueller raises equal protection arguments under K.S.A. 1993 Supp. 21-4724(b)(2). *Chiles v. State*, 254 Kan. 888, 869 P.2d 707 (1994), controls this issue. *Chiles* involved offenders who were incarcerated when the KSGA became effective. Those offenders challenged the limited retroactive provision of K.S.A. 1993 Supp. 21-4724(b)(1), which makes eligibility for sentence conversion dependent upon the classification of the offense, *i.e.*, less serious of-

fenders. The *Chiles* court held the limited retroactive provision of subsection (b)(1) did not violate the Equal Protection or Due Process Clauses of the United States Constitution or the Kansas Constitution. 254 Kan. at 901, 903.

Under K.S.A. 1993 Supp. 21-4724(b)(2), which Mueller challenges, parolees who had their parole revoked can have their pre-KSGA sentence converted only if they are eligible under subsection (b)(1). Because conversion eligibility under subsection (b)(2) is dependent upon the conditions of (b)(1), Mueller's challenge is actually upon the conditions in subsection (b)(1). Thus, he is asking this court to reverse *Chiles*, which we cannot do. The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *Gadberry v. R.L. Polk & Co.*, 25 Kan. App. 2d 800, 808, 975 P.2d 807 (1998). There is no indication the Supreme Court is departing from its previous positions. Further, Mueller's argument for reversing *Chiles* is flawed.

Mueller argues he should be considered a less serious offender because he was granted parole. He relies upon language in *Payton v. State*, 22 Kan. App. 2d 843, 846-47, 923 P.2d 1059 (1996) (The parole board found there was a reasonable probability that Payton was able and willing to fulfill the obligations of a law-abiding citizen and granted him parole. Therefore, inmates who are granted parole are those individuals considered less serious offenders or not a threat to public safety.). While the parole board may have found that Mueller was able and willing to fulfill the obligations of a law-abiding citizen by granting him parole, the legislature chose the classification of the offense for determining whether a person was a less serious offender and eligible for sentence conversion. Under *Chiles*, the limited retroactive sentence conversion provision of K.S.A. 1993 Supp. 21-4724(b)(2) is not violative of the Equal Protection and Due Process Clauses of the Constitutions of the United States or Kansas.

Mueller's motion also raises an equal protection argument regarding K.S.A. 1993 Supp. 22-3717(f). This argument has been considered and rejected by our appellate courts. See *State v. Perez*, 269 Kan. 340, 11 P.3d 52 (2000) (adopting the rationale of *Adams*

*v. State*, 27 Kan. App. 2d 292, 5 P.3d 1002 [2000]). Again, this court is duty bound to follow Kansas Supreme Court precedent. *Gadberry*, 25 Kan. App. 2d at 808. There is no indication the Supreme Court is departing from its previous positions.

Mueller also makes a due process challenge to K.S.A. 1993 Supp. 22-3717(f). Neither the *Perez* nor the *Adams* courts addressed a due process challenge to K.S.A. 1993 Supp. 22-3717(f). His new claim is considered. See *State v. Bissell*, 24 Kan. 169, 170, 943 P.2d 76 (1997).

"The constitutionality of a statute is a question of law; therefore, we have unlimited review." A statute is presumed constitutional, and the party attacking the statute has the burden of proof. "If there is any reasonable way to construe a statute as constitutionally valid, we must do so. [Citation omitted.]" *Perez*, 269 Kan. at 342.

Due process emphasizes fairness between the state and the individual dealing with the state. The due process test is whether the regulation is reasonable in relation to its subject and is adopted in the interest of the community. When a court has addressed whether a statute violates equal protection, it will have implicitly determined whether the statute violates due process. The due process and equal protection tests weighs almost identical factors in determining the constitutionality of a statute. *Chiles*, 254 Kan. at 902.

As noted in *Perez*, the legislature enacted K.S.A. 1993 Supp. 22-3717(f) to bridge the gap between two different statutory sentencing schemes for parolees who would be subjected to both. The statute has a reasonable relation to that objective. A parolee who is returning to prison after having been convicted and sentenced on a new felony will face an additional sentence which is most likely to be served consecutive to the pre-KSGA sentence. Restricting conversion to offenders facing sentences from both statutory schemes is reasonably related to the KSGA's goal of " 'consistency and proportionality, as well as public safety, by diminishing the disparity in sentences where it would most prominently appear.' " 269 Kan. at 343 (quoting *Adams*, 27 Kan. App. 2d at 294). K.S.A. 1993 Supp. 22-3717(f) is reasonable in relation to the KSGA's ob-

jective, diminishing sentence disparity, and was adopted in the interest of public safety. It is not violative of due process.

Mueller's last argument involves the doctrine of unconstitutional conditions. Appellate review for a constitutional challenge to a statute has been stated above.

Mueller's appellate counsel argues in his brief that when the parole board grants parole to prisoners, parole becomes a liberty interest protected by the Constitutions of the United States and Kansas. To convert their pre-KSGA sentence under K.S.A. 1993 Supp. 22-3717(f), the parolees must relinquish their protected parole liberty interest, *i.e.*, have their parole revoked by committing a new felony offense and being sentenced to prison for the new offense. According to Mueller, this places an unconstitutional condition upon the parolee.

Mueller's pro se brief makes essentially the same argument regarding K.S.A. 1993 Supp. 21-4724(b)(2). To convert a pre-KSGA sentence under K.S.A. 1993 Supp. 21-4724(b)(2), a parolee must relinquish his or her protected parole liberty interest, *i.e.*, have his or her parole revoked by committing a technical violation.

Both briefs cite *Morrissey v. Brewer*, 408 U.S. 471, 481-82, 33 L. Ed. 2d 484, 494-95, 92 S. Ct. 2593 (1972), as authority for parole being a fundamental liberty interest protected by the 14th Amendment. The *Morrissey* court stated revocation of parole deprives a parolee not of absolute liberty but only of conditional liberty *dependent upon compliance with parole restrictions*. 408 U.S. at 480. This limited liberty interest is within the protection of the Due Process Clause of the 14th Amendment. 408 U.S. at 482.

However, the issue in *Morrissey* was what process was due before parole could be revoked. *Morrissey* only protects a procedural right to a hearing which meets the minimum requirements of due process prior to the revocation of parole. 408 U.S. at 487-89. Neither brief argues Mueller was denied procedural due process regarding his parole revocation. And, as discussed above, neither statute violates substantive due process rights.

The doctrine of unconstitutional conditions has been explained as follows:

"The doctrine of unconstitutional conditions holds that government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold that benefit altogether. It reflects the triumph of the view that government may not do indirectly what it may not do directly over the view that the greater power to deny a benefit includes the lesser power to impose a condition on its receipt." Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1413, 1415 (1989).

Mueller relies upon *Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S. Ct. 967 (1968), as authority for this doctrine. In *Simmons*, the defendant moved to suppress from evidence a suitcase containing incriminating items. The defendant testified he owned these items. The court denied the motion. The defendant's testimony at the suppression hearing was admitted at trial. On appeal, he argued it was reversible error to admit his testimony from the motion hearing at trial because that testimony established his ownership of the suitcase, connecting him to the crime.

The lower court reasoned that the defendant's testimony was voluntary and he had waived his Fifth Amendment right against self-incrimination in order to establish standing to invoke his Fourth Amendment right to be free from illegal searches and seizures. The Supreme Court rejected this reasoning because it assumed the defendant had a choice—refuse to testify at the suppression hearing and forego the benefit, *i.e.*, the constitutional protection from illegal searches and seizures. 390 U.S. at 393-94. The Court found "it intolerable that one constitutional right should have to be surrendered in order to assert another." 390 U.S. at 394. It held a defendant's testimony in support of a motion to suppress evidence cannot be admitted against the defendant at trial regarding guilt unless no objection is made. 390 U.S. at 394.

Mueller's argument is flawed. His parole status was dependent upon his not violating any parole conditions. A parolee cannot be returned to prison without a parole violation. Once he had violated a parole condition and parole had been revoked pursuant to the due process procedures under *Morrissey*, he no longer had a constitutionally protected limited liberty interest. It had been extinguished. To invoke the unconstitutional condition doctrine, the statutes would have had to authorize retroactive sentence conver-

sion only if the parolees relinquished their parole status and returned to prison *without violating any parole conditions*. In such circumstances, the parolee still possesses a limited liberty interest which he or she must relinquish to be eligible for retroactive sentence conversion.

Whether a parolee disobeys a parole condition by committing a new offense or by violating a parole condition, he or she does not have a statutory right to have a pre-KSGA sentence converted to a KSGA sentence. "The legislature did not intend to guarantee any particular offender that his or her sentence would be subject to modification and conversion after 1993." *State v. Roseborough*, 263 Kan. 378, 387, 951 P.2d 532 (1997).

Last, Mueller claims his sentence has evolved into cruel and unusual punishment, violating § 9 of the Kansas Constitution Bill of Rights. He argues that a person who had a sentence for a class A felony converted under K.S.A. 1993 Supp. 22-3717(f) could serve less prison time than he will for his class B felony.

As discussed above, Mueller's sentence was in accordance with the sentencing statute in effect when the crime was committed; his sentence is legal. Providing for the punishment of convicted criminals is the exclusive role of the legislature. Only the Constitutions of the United States and of the State of Kansas control the legislature's power to punish convicted criminals. *Roseborough*, 263 Kan. at 384. Muller's constitutional rights were not violated by denying him sentence conversion. Authorizing sentence conversion to reduce the punishment or grant leniency to some convicted criminals was an act of grace by the legislature. 263 Kan. at 386. Mueller's claim of cruel and unusual punishment fails.

Mueller was free to choose to keep his limited liberty interest by complying with his parole conditions. The statutory conditions placed upon a parolee to have a pre-KSGA sentence converted to a KSGA sentence are within the control of the legislature, not the courts.

Affirmed.